FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 29, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JOHNSON FOODS, INC., a Washington
corporation, UNIGARD INSURANCE
COMPANY as subrogee to JOHNSON
FOODS, INC., a Washington corporation,

                              Plaintiffs,

        v.

LETICA CORPORATION, a Michigan
corporation; DOES 1 through IV,

                              Defendants.

_____

No. 1:16-CV-3197-LRS

**ORDER DENYING
MOTIONS FOR SUMMARY
JUDGMENT**

        **BEFORE THE COURT** is Defendant Letica Corporation's (Letica's)

Motion For Summary Judgment (ECF No. 34) and Plaintiffs' Motion For

Summary Judgment (ECF No. 39).  These motions were heard with oral argument

on October 25, 2018.  Sean A. Russel, Esq., argued for Plaintiffs. Amanda D.

Daylong, Esq., argued for Defendant.


**I. BACKGROUND**

        This is a diversity case removed from Yakima County Superior Court.

Plaintiff Johnson Foods, Inc. (Johnson Foods) and its subrogee, Plaintiff Unigard

Insurance Company (Unigard), assert four causes of action against Letica under

the Washington Products Liability Act (WPLA), RCW Chapter 7.72, and one

cause of action under the Washington Consumer Protection Act (CPA), RCW

**ORDER DENYING MOTIONS
FOR SUMMARY JUDGMENT-        1**

Chapter 19.86.  The product liability causes of action include design defect, failure to warn, and breach of express and implied warranties.  The CPA cause of action is premised on alleged false advertising.

Plaintiffs' summary judgment motion seeks to establish liability as a matter of law on all of the claims pled by Plaintiffs, with the only issue remaining for trial being damages.

Defendant seeks summary judgment on all of Plaintiffs' claims, asking the court to find as a matter of law there are no disputed facts to preclude a determination that Defendant did not violate the WPLA or the CPA.

## II. UNDISPUTED FACTS

Johnson Foods is a food processor supplying processed cherries and asparagus to customers.  It commonly uses square plastic 4-gallon containers and lids to store and ship processed cherry halves.  Bins of fresh cherries are received at its Sunnyside plant which are then washed, pitted, and run along an automated line and into the open plastic containers.  The filled and sealed containers are then placed in freezer storage where they become "block frozen" while awaiting shipment to customers.  One of these customers is Agrana Fruit U.S., Inc. (Agrana).

Letica is a manufacturer of injection-molded high-density polyethylene (HDPE) commercial food containers.  In 2013, Johnson Foods ordered 30,000 4LSQ lids (square plastic lids) and 4QH buckets (four-gallon square plastic buckets) from Letica for use in processing its halved cherries.  Johnson Foods used these Letica containers to ship block-frozen cherries to Agrana.

The 4LSQ lid is a square, gasket-less, peel off, injection-molded HDPE product, compatible with Letica's 4-gallon square containers, including the 4QH container.  The lid and container have a "wiper plug fit" which provides a tight seal without need for a gasket.  The 4LSQ lid is designed so that it locks to the

**ORDER DENYING MOTIONS**
**FOR SUMMARY JUDGMENT-      2**

4QH container in four places in the middle of each side of the lid. The 4LSQ lid is imprinted with the instruction to "LIFT ARROWS TO OPEN" with four arrows pointing to the four sides of the lid.

On October 30, 2013, Johnson Foods received notice from Agrana that it was finding small pieces of white plastic inside the containers and within the frozen cherries. Agrana uses an opening tool known as a Quickie tool to remove plastic lids at the corners of the plastic containers. Once the lids are removed, Agrana places the contents of the containers onto a scale for weighing and an initial inspection. It was during the weighing and inspection process that Agrana discovered small pieces of white plastic mixed in and around the frozen cherry block. Agrana returned the product and the containers to Johnson Foods.

Johnson Foods ordered and received new 4LSQ lids from Letica believing the original shipment of lids might be defective. Johnson Foods began "re-lidding" the containers. The "re-lidding" process included removing the original Letica lids from the corners with the Quickie tool, removing all small pieces of white plastic that were observable on the top of the block-frozen cherries, and securing a new 4LSQ Letica lid on the Letica container using a hydraulic lid closer purchased upon the recommendation of Letica after the contamination had been discovered.

Johnson Foods shipped the "re-lidded" product to Agrana, but Agrana still found small white plastic pieces embedded in and around the block-frozen cherries. Agrana rejected the entire Johnson Foods order and shipped approximately 16,000 full containers back to Johnson Foods.

## III.  SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469 (1975). Under Fed. R.

**ORDER DENYING MOTIONS**
**FOR SUMMARY JUDGMENT-     3**

Civ. P. 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986); *Semegen v. Weidner*, 780 F.2d 727, 732 (9th Cir. 1985). Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248. A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact-finder could find in favor of the non-moving party. *Id.*

The moving party has the initial burden to prove that no genuine issue of material fact exists. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986).

When considering a motion for summary judgment, the court does not weigh the evidence or assess credibility; instead "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson*, 477 U.S. at 255. Nonetheless, summary judgment is required against a party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the claim. *Celotex*, 477 U.S. at 322-23.

## IV. DISCUSSION

All of the claims asserted by Johnson Foods in this matter hinge, at least in part, on the question of whether Letica provided an adequate instruction/warning regarding opening the 4LSQ lids on the 4QH containers (also referred to herein as

**ORDER DENYING MOTIONS
FOR SUMMARY JUDGMENT- 4**

"buckets"). Many of Defendant's arguments are premised on its belief that the instruction on the lid was clear and therefore, the failure of Johnson Foods to follow the instruction was the proximate cause of its damages. Accordingly, the issue of failure to adequately instruct/warn is where the court begins its analysis.

**A. WPLA**

**1. Failure To Adequately Instruct/Warn**

RCW 7.72.030(1)(b) provides:

> A product is not reasonably safe because adequate warnings or instructions were not provided with the product, if, at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, rendered the warnings or instructions of the manufacturer inadequate and the manufacturer could have provided the warnings or instructions which the claimant alleges would have been adequate.

Claims for failure to adequately warn may be based on either the risk-utility test or on the consumer expectations test. *Thongchoom v. Graco Children's Products, Inc.*, 117 Wn. App. 299, 71 P.3d 214 (2003). The adequacy of warnings, like the reasonable safety of the product's design, is determined by a standard of the consumer's reasonable expectations, not by whether the manufacturer used reasonable care in providing warnings. *Ayers v. Johnson & Johnson Baby Products Co.*, 117 Wn.2d 747, 762 , 818 P.2d 1337 (1991). Inadequate warnings subject a manufacturer to strict liability and therefore, foreseeability of risk is not an element of proof as it is in negligence cases. Thus, in *Ayers*, where an infant aspirated baby oil, causing severe injuries, it was error for the trial court to require proof that the risk of aspiration was foreseeable. Even if the product manufactured by the defendant does not pose a risk of harm, so long as the product will foreseeably be used in conjunction with products that can cause harm, a duty to warn may arise. *Macias v. Saberhagen Holdings, Inc.*, 175 Wn.2d 402, 416, 282 P.3d 1069 (2012).

**ORDER DENYING MOTIONS
FOR SUMMARY JUDGMENT-    5**

In a warning defect case, the risk-utility analysis is whether the manufacturer could have provided warnings that would have prevented the injury. Unlike the cost of an alternative design, the cost of providing additional warnings is typically minimal and therefore, a product may be defective if it fails to warn of a risk, even a remote one, so long as the manufacturer is in a position to provide adequate warning. *Macias*, 175 Wn.2d at 419. Nevertheless, a failure to provide adequate warning will not result in liability unless the plaintiff can show that the lack of adequate warning was a proximate cause of the injuries sustained. *Soproni v. Polygon Apartment Partners*, 137 Wn.2d 319, 326, 971 P.2d 500 (1999).

A product that is safe for use when a warning is followed is neither defective nor is it unreasonably dangerous. *Baughn v. Honda Motor Co.*, 107 Wn. 2d 127, 136, 727 P.2d 655 (1986), citing Restatement (Second) of Torts §402A cmt. J (1965).

The adequacy of a warning will generally be a question of fact, but a question of fact can be determined as a matter of law when reasonable minds can reach only one conclusion from the admissible evidence. *Estate of La Montagne v. Bristol-Myers Squibb*, 127 Wn. App. 335, 343, 111 P.3d 857 (2005).

An instruction is intended to encourage "effective use" of the product, whereas a warning is intended to assure a "safe" use of the product. *McCully v. Fuller Brush Co.*, 68 Wn. 2d 675, 679, 415 P.2d 7 (1966).

John Selina has been the product design manager at Letica for the past 14 years. (ECF No. 41-1 at p. 9). He was deposed on August 17, 2018. He acknowledged Letica does testing regarding opening and closing lids on its buckets and that it has tested the 4LSQ lids and 4QH buckets by opening them at various locations on the lids. (*Id*. at p. 17). Asked what testing had been done, Selina stated "[w]e've also done destructive tests, seeing what would happen if [we] used a tool or some other means to open from the corners or from the sides." (*Id*. at pp. 17-18). Asked by his own counsel whether this destructive testing was

done "after this lawsuit," Selina answered that "[w]e do it on all of our products." (*Id.* at p. 19).[1]

Selina indicated Letica does destructive testing on "any new design," using "tools or some other unconventional method to take the lid off in the corners, sides, so forth." (*Id.*). According to Selina:

> **We do it on a regular basis, ongoing basis, to all of our products**, using tools, container lid opening tools, as well as screwdrivers, and whatever else we may have handy that somebody might use.

(*Id.* at 19)(emphasis added).

Selina stated the tools used in the testing include the Husky tool and the Quickie tool. (*Id.* at 20). He testified his experience with the Quickie tool is it is "destructive" in that it "attacks the plastic" and "gouges the plastic." (*Id.*). Selina maintained the lids are designed to be taken off by hand. (*Id.*). He testified that warnings are not put on the lids identifying tools that would do damage because the lids are made to be removed by hand and there would not be enough room on the lids to list all of the tools that would cause damage. (*Id.* at p. 30). Selina says he is not aware of any written instructions being delivered to customers when they purchase Letica products. (*Id.*).

On September 21, 2018, Selina, in an attempt to "expand and clarify" his comments regarding the impact of using the Quickie tool, made the following "correction" to his deposition: "I'm not aware of any testing during the initial development of the 4QH/4LSQ Package as it was developed over 33 years ago." He asserted the destructive testing to which he testified "was completed after this

---

[1] The lawsuit was filed in Yakima County Superior Court on October 12, 2016, and removed to federal court on November 2, 2016. (ECF No. 1).

**ORDER DENYING MOTIONS**
**FOR SUMMARY JUDGMENT-    7**

litigation started." (ECF No. 48-5).[2]  During his deposition, Selina was specifically asked by his counsel whether destructive testing was done after this lawsuit started.  He stated destructive testing of all of Letica products occurs on a regular, ongoing basis.  He certainly did not assert that destructive testing was done only after the lawsuit started, even though he clearly had an opportunity to do so.

Selena's credibility is something which a jury will decide.  The court notes, however, that it does not matter if Letica knew before or after the lawsuit started that opening the lids at the corners would cause damage to the plastic.  As discussed herein, the WPLA is a strict liability statute.  The question is whether there was an adequate instruction/warning regarding the use of the product and whether the product was defectively designed.  It is not critical whether the manufacturer knew the product was defectively designed or when it knew such.  Under the CPA, as discussed *infra*, all a plaintiff needs to prove is the defendant engaged in an unfair or deceptive act or practice.  The plaintiff does not need to prove intent to deceive.

Cameron Main was a sales representative for Letica.  He made a cold call to Gary Johnson, President of Johnson Foods, which led to Johnson Foods purchasing the lids and buckets in question.  (ECF No. 41-1 at p. 50).  He knew Johnson Foods intended to use the buckets to put cherries in them.  (*Id*. at p. 53).  He did not discuss with Gary Johnson or anyone at Johnson Foods the removal of

_____

[2]  In Defendant's Reply in support of its motion for summary judgment (Footnote 1 at p. 7 of ECF No. 56), it says testing was not conducted until the 2013 events giving rise to this litigation.  That appears to be inconsistent with an assertion that testing was not conducted until after the lawsuit started.

**ORDER DENYING MOTIONS**
**FOR SUMMARY JUDGMENT- 8**

the lids from the buckets. (*Id*. at 59-60). He did not discuss with Johnson Foods or any other customer what tool could be used to remove the lids and does not know what tool could be used. (*Id*. at 62). Letica did not require Main to provide instructions or warnings to customers. (*Id*. at 83).

Kraig Alexander is the Director of Quality at Letica. (ECF No. 41-1 at p. 109). During his deposition, he testified he was unaware if Letica sales representatives are trained to provide warnings regarding the 4LSQ lids and 4QH buckets. (*Id*. at p. 126). According to him, the only instruction provided to customers is what is printed on the lids: "LIFT ARROWS TO OPEN" with four arrows pointing to the four sides of the lids. (*Id*. at p. 127). In an email to Gary Johnson dated May 30, 2014, Alexander included some pictures of a tool that could be used to remove the lids and indicated he had ordered some of those to be delivered to Johnson Foods. (ECF No. 36-2). This tool was the Husky tool which is used to open the lids at the sides where the arrows are located.

Gary Johnson notes this email came seven months after Letica was notified by Johnson Foods of plastic parts being found in the cherries sent to Agrana. (ECF No. 60). He further asserts this email came after Johnson Foods had completed re-lidding the Letica buckets and was the first time Letica provided Johnson Foods with information how to properly remove the lids. (*Id*.). According to Johnson, the information was too late because the damages had already been incurred. (*Id*.).

In his April 5, 2018 deposition, Alexander said he believes the May 30, 2014 email represented the first time he recommended to Gary Johnson that he use the Husky tool to remove the lids and was the only time he sent Johnson a picture of the Husky tool. (ECF No. 57 at pp. 58-59).

Warren F. Harris is a forensic chemist who was retained by Plaintiffs "to characterize the cause of the food contamination through a non-destructive examination of a subject bucket and lid and through an examination of slivers and

**ORDER DENYING MOTIONS**
**FOR SUMMARY JUDGMENT-      9**

fragments." The work "also included destructive simulation testing of exemplar buckets and lids." (ECF No. 38-5 at p. 4). At his deposition, Harris testified the Quickie tool used by Johnson Foods did not work to open the lids from the sides because the hook did not fit on the sides. (ECF No. 38-4 at p. 18). When the Quickie tool was used to open the lids from the corners, Harris testified he was able to simulate production of plastic fragments. (*Id.*).[3] Although not within the scope of the work for which he was retained and therefore, not an opinion expressed in his report (ECF No. 38-5), Harris opined during his deposition that the instruction contained on the lids- "LIFT ARROWS TO OPEN" with four arrows pointing to the four sides of the lids- was "adequate." (ECF No. 38-4 at p. 43).

The adequacy of the instruction is a question for a jury based on the applicable law as to which the jury is instructed (e.g., the risk-utility test). Therefore, the court believes Harris' opinion on the issue is irrelevant and even if relevant, unduly prejudicial, and should not be allowed at trial. It follows that Defendant's expert, Dwayne Arola, Ph.D., should also not be allowed to offer an opinion on this issue. The adequacy of the instruction was not part of the scope of the opinions Dr. Arola was retained by Defendant to offer (see original report at

[3] In his report (Paragraph 3.9 at p. 8 of ECF No. 38-5), Harris wrote:

> In all cases[,] the Letica . . . lids included directions and arrows indicating how to remove the lids. In both cases[,] removal of the lid is by prying from the sides as opposed to the corners. Through our simulative bucket opening tests, it was determined that the acquired bucket opening tool used by Johnson Foods to reopen the returned stock of buckets [the Quickie tool] could only open the bucket from the corners and could not be oriented to open the bucket correctly from the sides. As previously discussed[,] this method would produce fragments from the outer corner of the bucket.

**ORDER DENYING MOTIONS**
**FOR SUMMARY JUDGMENT-    10**

ECF No. 48-13), although he arguably may have offered such an opinion in his supplemental report (see ECF No. 48-15 at p. 6). Adequacy of the instruction is something that need not be testified to by an expert as it a question that can and should be answered by the average layperson. This is not an instance where an "expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).

Notwithstanding the instruction on the 4LSQ lids, a jury could reasonably conclude there was a significant likelihood a buyer would attempt to open the lids at the corners. These lids were sealed tight to avoid spillage of food product and although Letica maintains they were intended to be removed by hand, it also recommended the Husky tool and touted the seal created by the wiper plug fit between the lid and the bucket.

Johnson Foods contends a warning should have been provided that the lids were to be popped open only at the sides and should have been imprinted on the lids themselves, inserted in product literature, or conveyed verbally through an instructional session between Letica's salespersons and customers. Johnson Foods says that in lieu of or in addition to a warning on the lids that they were to be popped open only at the sides, Letica could have included a warning on the lids that they were not to be opened at the corners and were to be opened only by hand. Johnson Foods contends a warning would have allowed it to take the necessary steps to avoid incurring damages.

Letica seemingly acknowledges that what was imprinted on the lids- "LIFT ARROWS TO OPEN" with four arrows pointing to the four sides of the lids- was not a warning intended to assure a "safe" use of the product, but rather an instruction intended to encourage "effective use" of the product. A jury should decide if this instruction was adequate. Because there is an issue of material fact regarding the adequacy of the instruction, there is also an issue of material fact

**ORDER DENYING MOTIONS**
**FOR SUMMARY JUDGMENT-      11**

whether the absence of an adequate instruction/warning was the proximate cause of the damages Johnson Foods claims to have suffered. The threshold question regarding proximate cause is not whether misuse caused the damage, but whether absence of an adequate instruction/warning did. A question of factual causation will only be decided as a matter of law "if the causal connection is so speculative and indirect that reasonable minds could not differ." *Doherty v. Municipality of Metropolitan Seattle*, 83 Wn. App. 464, 469, 921 P.2d 1098 (1996).

Summary judgment should not be granted to a defendant where a reasonable jury viewing the record could find by a preponderance of the evidence that plaintiff is entitled to a favorable verdict. *George v. Edholm*, 752 F.3d 1206, 1214 (9th Cir. 2014). Based on the record in this case, a reasonable jury could conclude under the consumer expectations test that Johnson Foods had a reasonable expectation that it would be provided additional instruction and/or warning to only lift the lids open at the sides and to not pry them open from the corners.[4] Under the risk utility test, a reasonable jury could find by a preponderance of the evidence there was a likelihood the lid/bucket package would cause the harm suffered by Johnson Foods and that considering the seriousness of the harm (plastic particles in food product), the instruction on the lids regarding opening of the same was inadequate and Letica could have provided the instruction/warning Johnson Foods contends would have been adequate. Letica knew the lid/bucket package was going to be used by Johnson Foods to store food and a jury could

---

[4] Based on the current state of the record, a jury will have to decide how "ordinary" a consumer Johnson Foods is and if it possessed a higher level of sophistication that should factor into the reasonableness of its expectation.

**ORDER DENYING MOTIONS**
**FOR SUMMARY JUDGMENT- 12**

reasonably conclude this made it even more imperative that Letica provide an appropriate instruction/warning. A jury could reasonably conclude it would not have been burdensome or unduly costly for Letica to provide an additional instruction and/or warning to Johnson Foods on the lids and/or by other means.[5] Johnson Foods does not contend Letica needed to list on the lids all the tools that could possibly cause damage if they were used to open the lids. The gravity of potential harm and the seemingly minimal cost and feasibility of eliminating the risk could lead a jury to reasonably conclude Letica's instruction on the lids was inadequate.

Letica contends that on or around July 1, 2014, Johnson Food employees were filmed removing 4LSQ lids from the corners using the Quickie tool. (Declaration of Kraig Alexander, ECF No. 49 at Paragraph 8, and Ex. C thereto; see also ECF No. 58 at Paragraph 24). Contrary to Letica's assertion, it is not uncontroverted that Johnson Foods knowingly continued to misuse the lids and containers after Letica's May 30, 2014 email. That very short email said nothing specific about not attempting to open the lids at the corners and only opening the lids at the sides. The email reads: "Here are some lid pictures of the lid removal tools we discussed. I have ordered some and they will be delivered Monday morning to your attention." (ECF No. 49-2). And as noted above, Gary Johnson asserts the Agrana-related damages for which Plaintiffs seek recovery had already been incurred by May 30, 2014.

The fact Johnson Foods was aware of the instruction on the lids and opened the containers from the corners is not dispositive, nor is it dispositive that the only Johnson Foods customer who complained about plastic in the cherry product was

_____

[5] The record indicates Johnson Foods was charged $1.49 for each bucket and $.51 for each lid, for a total of two dollars. (ECF No. 54-3 at p. 14).

**ORDER DENYING MOTIONS**
**FOR SUMMARY JUDGMENT-    13**

Agrana which also opened the lids from the corners. As discussed above, the adequacy of an instruction/warning will generally be a question of fact and that is true in this case.

## 2. Defective Design

RCW 7.72.030(1) states a "product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was not reasonably safe as designed."

There are two different ways for a plaintiff to show that a product was defectively designed. The first way is the risk-utility approach specified in RCW 7.72.30(1)(a):

> A product is not reasonably safe as designed, if, at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, outweighed the burden on the manufacturer to design a product that would have prevented those harms and the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the product.

The second way is the consumer-expectations approach specified in RCW 7.72.030(3) in which the plaintiff shows the product "was unsafe to an extent beyond that which would be contemplated by the ordinary consumer." According to *Seattle-First Nat'l Bank v. Tabert*, 86 Wn.2d 127, 154, 727 P.2d 655 (1986):

> In determining the reasonable expectations of the ordinary consumer, a number of factors must be considered. The relative cost of the product, the gravity of the potential harm from the claimed defect and the cost and feasibility of eliminating or minimizing the risk may be relevant in a particular case. In other instances[,] the nature of the product or the nature of the claimed defect may make other factors relevant to the issue.

These approaches are alternative, independent means of proving defective design. A plaintiff need prove only one, not both, of these alternatives. *Ruiz-Guzman v. Amvac Chem. Corp.*, 141 Wn.2d 493, 502-03, 7 P.3d 795 (2000).

The risk-utility test involves strict liability principles even though RCW

**ORDER DENYING MOTIONS**
**FOR SUMMARY JUDGMENT-      14**

7.72.030(1) refers to "negligence." The "negligence" referred to in the statute is the "negligence of the manufacturer in that the product was not reasonably safe." *Falk v. Keene Corp.*, 113 Wn.2d 645, 657, 782 P.2d 974 (1989).

The risk-utility test requires a balancing of factors as explained in *Ayers*, 117 Wn.2d at 763:

> On one side of the balance in subsection (a) are the likelihood that the product would cause the claimant's harm or similar harms and the seriousness of those harms. On the other side of subsection (a)'s balance are the burden on the manufacturer to design a product that would have prevented those harms, and the adverse effect that a feasible alternative design would have on the usefulness of the product.

Johnson Foods claims the 4LSQ lids and 4QH buckets were defectively designed because if the lids were opened at the corners, as they were here, plastic parts would tear away from the lids and/or buckets and end up in the food product. According to Johnson Foods, "[t]he alternate design which would have prevented Johnson Foods from peeling the plastic 4LSQ lids from the corners and subsequently incurring damages would have been to emboss a simple warning on the lids which warned of potential contamination if the lids are peeled off at the corners." Gary Johnson maintains that had Letica provided any warning at all, such as stating the lids could only be removed at their sides, either by hand or with the Husky tool, Johnson Foods would have notified Agrana and itself would not have removed the lids at the corners. (Johnson Declaration, ECF No. 54 at Paragraph 1). It is for a jury to decide Johnson's credibility. Potentially relevant in that regard is Letica's claim that Johnson Foods continued to peel 4LSQ lids off at the corners in July 2014.

For essentially the same reasons there is an issue of material fact regarding the adequacy of the instruction/warning provided by Letica, there is an issue of material fact whether Letica's lid/bucket package was defectively designed. These issues are inextricably intertwined. Proper removal of the lids is not the question.

**ORDER DENYING MOTIONS**
**FOR SUMMARY JUDGMENT-     15**

The question is whether Johnson Foods was adequately instructed/warned regarding proper removal of the lids. If the instruction on the lids was inadequate, then there is clearly an issue whether the product (the lid/bucket package) was defectively designed because improper removal resulted in plastic fragments being deposited in the food stored and shipped in the buckets.

### 3. Express Warranties

RCW 7.72.030(2) provides:

> A product manufacturer is subject to strict liability to a claimant if the claimant's harm was proximately caused by the fact that the product was not reasonably safe in construction or not reasonably safe because it did not conform to the manufacturer's express warranty or to the implied warranties under Title 62A RCW.

RCW 7.72.030(2)(b) states that "[a] product does not conform to the express warranty of the manufacturer if it is made part of the basis of the bargain and relates to a material fact or facts concerning the product and the express warranty proved to be untrue." Even if a product contains no defects in construction, design or warning, liability will be imposed upon a manufacturer or seller who makes express warranties concerning the performance of the product. Express warranties may be in words (oral or written), or they may appear in the form of pictures, samples, or models that create an expectation on the part of the consumer that a product is safe for use in the manner depicted. 16A Wash. Practice Tort Law and Practice, §17:15 (4th ed.).

RCW 62A.2-313(1) provides that express warranties by the seller are created in the following instances: (a) any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty; and (b) any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT- 16**

According to RCW 62A.2-313(2):

> It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he or she have specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

There is a genuine issue of material fact whether Letica, through its salesperson, Cameron Main, made an express warranty concerning the performance of the 4LSQ lids and the 4QH buckets. Main knew Johnson Foods intended to use the buckets to store and transport cherries, a food-grade product. (ECF No. 41-1 at p. 53). Gary Johnson claims he "relied exclusively on the skill and judgment of [Main] to assist in selecting the appropriate buckets and lids for Johnson Foods' product." (ECF No. 54 at Paragraph 4). Main communicated with Johnson in person and by email and telephone. (ECF No. 41-1 at p. 54). In an email dated June 5, 2013, Main advised Johnson the 4QH bucket should be "great" for the upcoming season. Attached to the email was a product specification sheet for the 4QH bucket. (ECF No. 54-2 at p. 10). In another email dated June 6, 2013, he advised Johnson he was "confident in telling [him] this container is what you are looking for." (ECF No. 54-3 at p. 15).

There is enough in the record that a jury could reasonably conclude Main's representations constituted an affirmation of fact or promise relating to the lid/bucket package which became part of the basis of the bargain between Johnson Foods and Letica, and/or that Main's representations constituted a description of the lid/bucket package which was made part of the basis of the bargain. A jury will decide whether Main's statements constitute an "affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods" which did not create a warranty.

//

//

**ORDER DENYING MOTIONS**
**FOR SUMMARY JUDGMENT-      17**

### 4. Implied Warranties

Whether or not an implied warranty exists is determined by reference to the Uniform Commercial Code, RCW Title 62A. RCW 7.72.030(2)(c).

RCW 62A.2-314 provides for an implied warranty of merchantibility: "[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Implied warranty of merchantibility encompasses considerations of the . . . adequacy of the package and label." *Hue v. Farmboy Spray Co.*, 127 Wn.2d 67, 89, 896 P.2d 682 (1995).

RCW 62A.2-315 provides for an implied warranty of fitness for a particular purpose:

> Where the seller at the time of contracting has reason to know of any particular purpose for which the goods are required and the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose.

Because there is an issue of material fact regarding the adequacy of the instruction/warning provided by Letica, a jury will decide whether Letica breached an implied warranty of merchantibility with regard to the lid/bucket package it sold Johnson Foods.

As discussed above, there is evidence in the record that Letica knew the particular purpose for which Johnson Foods needed the lid/bucket package (storing and shipping cherries) and Johnson Foods relied on Letica's skill and judgment in deciding to purchase the lid/bucket package. Accordingly, a jury will decide if Letica breached an implied warranty of fitness for a particular purpose.[6]

---

[6] Johnson Foods says the lids/buckets were used as intended because they were used to store food; Letica says the lids/buckets were not used as intended

**ORDER DENYING MOTIONS
FOR SUMMARY JUDGMENT-       18**

**5. Economic Loss**

"Harm" for which claims can be made under the WPLA includes any damages recognized by the courts of the State of Washington, but does not include direct or consequential economic loss under the Uniform Commercial Code, RCW Title 62A.  RCW 7.72.010(6).  Economic loss must be pursued through contractual remedies, not through tort remedies like the WPLA.  The WPLA cannot be used to circumvent the freedom of the parties to make contractual provision for the risk of loss.  *Alejandre v. Bull*, 159 Wn.2d 674, 682-83, 153 P.3d 864 (2007).

In a case involving a mixture of economic loss and property loss, the Washington Supreme Court has held that economic loss is determined through a "risk of harm" analysis.  There is potential liability for any product that poses a "risk of harm" to person or property, even if such harm has not actually occurred.  On the other hand, economic loss that results from product failure not posing a risk of harm will not give rise to a product liability claim.  *Washington Water Power Co. v. Graybar Elec. Co.*, 112 Wn. 2d 847, 853, 774 P.2d 1199 (1989), opinion amended on other grounds, 779 P.2d 697 (1989).  In determining whether the WPLA applies, the court examines whether there is damage only to the product itself, or whether the product has damaged other property.  *Jackson v. City of Seattle*, 158 Wn. App. 647, 244 P.3d 425 (2010).  Thus, in *Stanton v. Bayliner*

---

because Johnson Foods did not follow the instruction on the lid regarding removal of the lid.  Again, the threshold issue is the adequacy of the instruction.  If the jury finds the instruction was adequate, it seemingly cannot find there was a breach of any warranties, express or implied.

*Marine Corp.*, 123 Wn.2d 64, 866 P.2d 15 (1993), the court held the WPLA applied and the manufacturer could be held liable for the loss of a boat due to sudden flooding. Even though the damage was to the product itself (the boat), the allegedly defective design posed a risk of harm to passengers on the boat.

According to Johnson Foods, the contamination of the frozen cherries resulted in the rejection of those cherries by Agrana and "[t]his damaged Johnson foods by causing it to incur unnecessary and significant costs associated with relidding and repacking its product" and "caused Agrana to incur shipping costs, which were ultimately covered by [Unigard]." Elsewhere, Johnson Foods says the injuries to its business and property include loss of profits as a result of having to dispose of contaminated product, costs of culling and repacking, costs incurred to repurchase lids from Letica, and costs incurred in re-shipping the cherry product to Agrana.

Letica asserts that because Plaintiffs seek only damages for economic loss which are not recoverable under the WPLA, Letica should be granted an extension to file a motion for summary judgment on this issue which should be briefed and heard on an expedited basis. Letica does not explain why this issue could not have been addressed in its motion for summary judgment filed on September 5, the dispositive motion filing deadline specified in the court's Second Amended Scheduling Order (ECF No. 32) filed on April 19, 2018. Johnson Foods says it disclosed its damages twice on March 24, 2017, once in its initial disclosures and a second time in its answers to Letica's First Set Of Interrogatories and Requests For Production Of Documents. It says it disclosed the damages a third time on September 5, 2017, during the deposition of Gary Johnson.

Letica has not shown good cause for an extension of time, as required by Fed. R. Civ. P. 16(b)(4), to file an additional dispositive motion regarding the economic loss issue. This is an issue which Letica can address in a motion in limine. The court notes, however, that its initial impression is the damages sought

by Johnson Foods are recoverable under the WPLA because it is alleged the lid/bucket package damaged another product (frozen cherries stored and shipped in the buckets) and posed a risk of harm to the public. Moreover, as discussed below, damages for economic loss are recoverable under the CPA.

**B. CPA**

The Consumer Protection Act prohibits unfair methods of competition and unfair or deceptive acts or practices in trade or commerce. RCW 19.86.020. The CPA has been applied in product liability cases. *Hiner v. Bridgestone/Firestone, Inc.*, 138 Wn. 2d 248, 978 P.2d 505 (1999). Proof of violation of the CPA entitles a plaintiff to remedies including actual damages, treble damages (up to a maximum of $25,000), attorney's fees, and statutory costs. RCW 19.86.090. Economic loss is recoverable as actual damages under the CPA so long as the injury is to the plaintiff's business or property, and not a personal injury. *Ambach v. French*, 141 Wn. App. 782, 790, 173 P.3d 941, 945 (2007), reversed at 167 Wn. 2d 167 (2009). CPA damages are not subject to contractual limitations. *Riley v. Iron Gate Self Storage*, 198 Wn. App. 692, 395 P.3d 1059 (2017).

The five elements of a CPA claim are as follows: (1) an unfair or deceptive act or practice; (2) in trade or commerce; (3) public interest; (4) injury to business or property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn. 2d 778, 787-93, 719 P.2d 531 (1986). In order to prove the existence of an unfair or deceptive act or practice, it is sufficient to show the act or practice had the capacity to deceive a substantial portion of the public. It is not necessary to show intent to deceive. *Behnke v. Ahrens*, 172 Wn. App. 281, 294 P.3d 729 (2012). The public interest element is met if the unfair or deceptive act has or had the capacity to injure other persons. RCW 19.86.093. Causation means "proximate cause," a cause which in direct sequence, unbroken by any new independent cause, produces the injury complained of and without which such

**ORDER DENYING MOTIONS**
**FOR SUMMARY JUDGMENT-     21**

injury would not have happened. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn. 2d 299, 314, 858 P.2d 1054 (1993).

A jury could find that an inadequate instruction on a product amounts to a misleading or misrepresentation of something of material importance with a capacity to deceive a substantial portion of the public. *Holiday Report Cmty. Ass'n v. Echo Lakes Assocs., LLC*, 134 Wn. App. 210, 226, 135 P.3d 499 (2006). While there may be no evidence that Letica or any of its agents represented to Johnson Foods that opening the buckets in any manner other than pursuant to the instruction imprinted on the lids was safe, that is not the issue. The issue is what was not stated on the lids or otherwise, and whether that rendered inadequate what was imprinted on the lids. The CPA "shall be liberally construed that its beneficial purposes may be served." RCW 19.86.920.

For the same reason the WPLA claims need to be resolved by a jury- an issue of material fact regarding the adequacy of the instruction imprinted on the lids- the CPA claim must also be resolved by a jury. If the act or practice is not in dispute, the court may decide whether that act or practice was deceptive as a matter of law, but it is not compelled to do so. *Leingang v. Pierce County Med. Bureau*, 131 Wn. 2d 133, 149-50, 930 P.2d 288 (1997).

**V. CONCLUSION**

The critical question is whether the instruction imprinted on the 4LSQ lids was adequate. Based on the record before it, the court cannot determine as a matter of law that the instruction was adequate or inadequate. This is an issue of fact which requires resolution by a jury. If the instruction was adequate, it seems all of Plaintiffs' claims fail. If, however, the instruction was not adequate, it appears most, if not all, of Plaintiffs' claims will succeed.

Defendant's Motion For Summary Judgment (ECF No. 34) and Plaintiffs' Motion For Summary Judgment (ECF No. 39) are **DENIED**. Defendant's request

**ORDER DENYING MOTIONS**
**FOR SUMMARY JUDGMENT-      22**

for an extension to file an additional motion for summary judgment is **DENIED**.

   **IT IS SO ORDERED**.  The District Executive is directed to forward copies
of this order to counsel of record.

   **DATED** this____29th____of October, 2018.


                              *s/Lonny R. Suko*
   _____
                              LONNY R. SUKO
                      Senior United States District Judge


**ORDER DENYING MOTIONS
FOR SUMMARY JUDGMENT-     23**